UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

DEMETRIUS LAMAR BROCK,

      Petitioner,

      v.

RENEE BAKER, *et al.*,

      Respondents.

Case No. 3:20-cv-00220-LRH-CSD

**ORDER**

## I.    INTRODUCTION

This action is a petition for writ of habeas corpus by Demetrius Lamar Brock, an individual incarcerated at Nevada's Lovelock Correctional Center. Brock is represented by counsel. The case is before the Court for resolution of Brock's claims on their merits. The Court will deny Brock's petition, will deny Brock a certificate of appealability, and will direct the Clerk of the Court to enter judgment accordingly.

## II.    BACKGROUND

Brock was convicted in Nevada's Eighth Judicial District Court (Clark County), after a jury trial, of second-degree murder with use of a deadly weapon and carrying a concealed firearm or other deadly weapon. His convictions resulted from the murder of his neighbor, Tyrollia Belt, in Las Vegas, on November 5, 2012. He is serving a sentence of life in prison with minimum parole eligibility of ten years, plus a consecutive term of life with minimum parole eligibility of eight years, on the murder conviction, and a consecutive term of 36 months with minimum parole eligibility of twelve months on the conviction of carrying a concealed firearm or other deadly weapon.

In its order on Brock's direct appeal, the Nevada Court of Appeals described the factual background of the case as follows:

1
2
3
4
        The jury heard testimony Brock approached the victim around 6:00 or 6:30 p.m. and told him to stop slamming his apartment door. The two engaged in a heated argument that lasted about 10 to 20 minutes, after which the victim left the apartment complex with his wife and Brock discussed the incident with an apartment courtesy patrol officer. Later, sometime after 8:30 p.m., Brock encountered the victim in the apartment complex's parking lot and the two began to argue again.

        Brock was carrying his handgun in a fanny pack and the handgun was not visible to the victim. Brock removed the handgun from the fanny pack and moved towards the victim while shooting. Brock shot the victim in the head and the chest, and he continued to shoot after the victim had fallen. The forensic evidence showed Brock fired a total of 15 rounds while moving towards the victim and upwards of 5 of these rounds were fired into the victim as he lie dying on the ground.

Order of Affirmance, Exh. 63, pp. 1–2 (ECF No. 22-17, pp. 2–3).

On December 12, 2013, Brock was indicted by a grand jury and charged with

second-degree murder with use of a deadly weapon and carrying a concealed firearm

or other deadly weapon. *See* Transcript of Grand Jury Proceedings, Exh. 9, p. 70 (ECF

No. 18-9, p. 71). Brock's jury trial commenced on February 18, 2014, and it lasted four

days. *See* Court Minutes, Exh. 1, pp. 7–14 (ECF No. 18-1, pp. 8–15); Trial Transcripts,

Exhs. 22 (day 2), 23 (day 3), and 26 (day 4) (ECF Nos. 19-1, 20-1, 21-1). The jury found

Brock guilty of all charges: second-degree murder with use of a deadly weapon and

carrying a concealed firearm or other deadly weapon. Verdict, Exh. 27 (ECF No. 21-2).

The judgment of conviction was filed on September 24, 2014. Judgment of Conviction,

Exh. 32 (ECF No. 21-7).

Brock appealed. *See* Appellant's Opening Brief, Exh. 58 (ECF No. 22-12). The

Nevada Court of Appeals affirmed on April 20, 2016. Order of Affirmance, Exh. 63 (ECF

No. 22-17).

Brock then filed a petition for writ of habeas corpus in the state district court on

December 27, 2016. Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 66

(ECF No. 22-20). Brock later filed a supplemental brief in support of that petition.

Supplemental Brief in Support of Petition, Exh. 69 (ECF No. 22-23). The state district

court granted Brock's motion to obtain an investigator and appointed an investigator for

him. *See* Motion for Authorization to Obtain Investigator, Exh. 68 (ECF No. 22-22);

Order for Appointment of Investigator, Exh. 73 (ECF No. 22-27). The court held an evidentiary hearing on August 23, 2018. *See* Transcript of Evidentiary Hearing, Exh. 75 (ECF No. 23-1). At the conclusion of the evidentiary hearing, and after argument by counsel, the judge stated he would deny Brock's petition. *Id.* at 67–68 (ECF No. 23-1, pp. 68–69). The state district court filed a written order denying Brock's petition on October 10, 2018. Findings of Fact, Conclusions of Law and Order, Exh. 84 (ECF No. 23-10). Brock appealed. *See* Appellant's Opening Brief, Exh. 92 (ECF No. 24-1); Appellant's Reply Brief, Exh. 94 (ECF No. 24-3). The Nevada Supreme Court affirmed on November 15, 2019. Order of Affirmance, Exh. 95 (ECF No. 24-4).

On April 9, 2020, Brock, represented by counsel, filed his habeas petition, initiating this action (ECF No. 1). Brock's petition includes the following claims:

Ground 1:  Brock's federal constitutional rights were violated because the evidence adduced at trial was insufficient to support his convictions.

Ground 2:  Brock's federal constitutional rights were violated on account of ineffective assistance of his trial counsel because of his trial counsel's "failure to introduce evidence of the deceased's violent past."

Ground 3:  Brock's federal constitutional rights were violated on account of ineffective assistance of his trial counsel because of his trial counsel's "failure to properly notice an expert witness."

Ground 4:  Brock's federal constitutional rights were violated on account of ineffective assistance of his appellate counsel because of his appellate counsel's "failure to raise on direct appeal that the district court improperly precluded a percipient [witness's] statements articulating that Mr. Belt was the probable aggressor."

Ground 5:  Brock's federal constitutional rights were violated on account of ineffective assistance of his trial and appellate counsel because of their "failure to object to the State presenting testimony regarding the autopsy from Dr. Lisa Gavin when she did not perform the autopsy."

Ground 6:  Brock's federal constitutional rights were violated on account of ineffective assistance of his trial counsel "based upon trial counsel's closing wherein counsel conceded the defendant's guilt without the defendant's consent."

Ground 7:  Brock's federal constitutional rights were violated on account of ineffective assistance of his trial and appellate counsel because of their "failure to object and advise the jury not to consider unfounded prejudicial character evidence."

Ground 8:  Brock's federal constitutional rights were violated on account of ineffective assistance of his trial and appellate counsel because of trial counsel's "failure to object" and appellate counsel's failure "to raise on appeal the district court's giving of improper jury instructions."

    A.  The Malice Instruction

    B.  The Premeditation and Deliberation Instruction

    C.  The Reasonable Doubt Instruction

    D.  The Equal and Exact Justice Instruction

Ground 9: "Mr. Brock is entitled to a reversal of his convictions based upon cumulative error."

Petition for Writ of Habeas Corpus (ECF No. 25), pp. 15–47.

Respondents filed an answer on March 12, 2021 (ECF No. 17). Brock filed a reply on June 16, 2021 (ECF No. 29). Respondents filed a response to Brock's reply on July 31, 2021 (ECF No. 34).

## III.   DISCUSSION

### A.   Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may not grant a petition for a writ of habeas corpus on any claim that was adjudicated on its merits in state court unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by United States Supreme Court precedent, or was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding. *See* 28 U.S.C. § 2254(d). A state-court ruling is "contrary to" clearly established federal law if it either applies a rule that contradicts governing Supreme Court law or reaches a result that differs from the result the Supreme Court reached on "materially indistinguishable" facts. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). A state-court ruling is "an unreasonable application" of clearly established federal law under section 2254(d) if it correctly identifies the governing legal rule but unreasonably applies the rule to the facts of the case. *See Williams v. Taylor*, 529 U.S. 362, 407–08 (2000). To obtain federal habeas relief for such an "unreasonable

application," however, a petitioner must show that the state court's application of Supreme Court precedent was "objectively unreasonable." *Id*. at 409–10; *see also Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003). Or, in other words, habeas relief is warranted, under the "unreasonable application" clause of section 2254(d), only if the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

## B.    Ground 1

In Ground 1, Brock claims that his federal constitutional rights were violated because the evidence adduced at trial was insufficient to support his convictions of second-degree murder and carrying a concealed firearm or other deadly weapon. Petition for Writ of Habeas Corpus (ECF No. 25), pp. 15–17.

Brock asserted this claim on his direct appeal. *See* Appellant's Opening Brief, Exh. 58, pp. 7–9 (ECF No. 22-12, pp. 11–13). The Nevada Court of Appeals ruled as follows:

> Appellant Demetrius Brock claims there was insufficient evidence to support his convictions. He argues the evidence does not support the finding of malice necessary for second-degree murder and his handgun was not concealed. We review the evidence in the light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Mitchell v. State*, 124 Nev. 807, 816, 192 P.3d 721, 727 (2008).

> The jury heard testimony Brock approached the victim around 6:00 or 6:30 p.m. and told him to stop slamming his apartment door. The two engaged in a heated argument that lasted about 10 to 20 minutes, after which the victim left the apartment complex with his wife and Brock discussed the incident with an apartment courtesy patrol officer. Later, sometime after 8:30 p.m., Brock encountered the victim in the apartment complex's parking lot and the two began to argue again.

> Brock was carrying his handgun in a fanny pack and the handgun was not visible to the victim. Brock removed the handgun from the fanny pack and moved towards the victim while shooting. Brock shot the victim in the head and the chest, and he continued to shoot after the victim had fallen. The forensic evidence showed Brock fired a total of 15 rounds while moving towards the victim and upwards of 5 of these rounds were fired into the victim as he lie dying on the ground.

We conclude a rational juror could reasonably infer from this evidence Brock carried his handgun concealed upon his person and acted with malice when he shot and killed the victim. *See* NRS 200.010(1); NRS 200.020; NRS 200.030(2); NRS 202.350(1)(d)(4). It is for the jury to determine the weight and credibility to give conflicting testimony, and the jury's verdict will not be disturbed on appeal where, as here, substantial evidence supports the verdict. *See Bolden v. State*, 97 Nev. 71, 73, 624 P.2d 20, 20 (1981).

Order of Affirmance, Exh. 63, pp. 1–2 (ECF No. 22-17, pp. 2–3).

The Due Process Clause of the United States Constitution "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992). "[F]aced with a record of historical facts that supports conflicting inferences," the court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326; *see also McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (reaffirming *Jackson* standard). The Supreme Court has emphasized that claims of insufficiency of the evidence "face a high bar in federal habeas proceedings ...." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam).

Furthermore, because this claim was raised in state court and was ruled upon by the Nevada Court of Appeals on Brock's direct appeal, 28 U.S.C. § 2254(d) adds an additional layer of deference; to prevail on the claim, Brock must demonstrate that the state court's ruling was an unreasonable application of the *Jackson* standard. *See Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).

Applying these standards, viewing the testimony at trial in its entirety in the light most favorable to the prosecution, the Court determines that this claim is without merit. There was ample evidence presented at trial upon which a rational trier of fact could have concluded that Brock acted with malice when he shot and killed Belt, and that

Brock carried a concealed firearm. *See* Trial Transcripts, Exhs. 22 (day 2), 23 (day 3), and 26 (day 4) (ECF Nos. 19-1, 20-1, 21-1). The Nevada Court of Appeals' ruling on this claim was not contrary to, or an unreasonable application of, *Jackson*, or any other Supreme Court precedent. The Court will deny Brock habeas corpus relief on Ground 1.

### C.    Ground 2

In Ground 2, Brock claims that his federal constitutional rights were violated on account of ineffective assistance of his trial counsel because of his trial counsel's "failure to introduce evidence of the deceased's violent past." Petition for Writ of Habeas Corpus (ECF No. 25), pp. 20–25.

In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel, requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. To establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. Where a state court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Harrington*, 562 U.S. at 104–05. In *Harrington*, the Supreme Court instructed that *Strickland* and section 2254(d) are each highly deferential, and when the two apply in tandem, review

is doubly so. *Id*. at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir.

2010) ("When a federal court reviews a state court's *Strickland* determination under

AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme

Court's description of the standard as doubly deferential." (internal quotation marks

omitted)). "When § 2254(d) applies, the question is not whether counsel's actions were

reasonable. The question is whether there is any reasonable argument that counsel

satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

Brock asserted this claim of ineffective assistance of counsel on the appeal in his

state habeas action. *See* Appellant's Opening Brief, Exh. 92, pp. 20–26 (ECF No. 24-1,

pp. 30–36). The Nevada Supreme Court ruled as follows:

> … Brock argues that counsel should have introduced evidence of
> the victim's child abuse convictions to prove he was the likely aggressor
> and support Brock's claim of self-defense. We conclude that counsel was
> not deficient. A defendant may "present evidence of a victim's character
> when it tends to prove that the victim was the likely aggressor," however,
> he may not prove that character evidence with specific instances of
> conduct. *Daniel v. State*, 119 Nev. 498, 514, 78 P.3d 890, 901 (2003); *see*
> NRS 48.055(1). While a defendant may introduce specific acts of violence
> if he was aware of those acts, *Daniel*, 119 Nev. at 515, 78 P.3d at 902, the
> record does not indicate that Brock was aware of any prior violent conduct
> by the victim. Therefore, the district court did not err in denying this claim.
> [Footnote: The district court erroneously concluded counsel was deficient,
> but denied the claim because Brock did not show prejudice. We conclude
> that the district court reached the correct result in denying this claim. *See*
> *Wyatt v. State*, 86 Nev. 294, 298, 468 P.2d 338, 341 (1970).]

Order of Affirmance, Exh. 95, p. 2 (ECF No. 24-4, p. 3).

The Nevada Supreme Court's determination that the evidence that Brock

believes his trial counsel should have proffered at trial would have been inadmissible

was based purely on the Nevada Supreme Court's interpretation of Nevada law. That

aspect of the Nevada Supreme Court's ruling is authoritative and beyond the scope of

this federal habeas action. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

Given, then, that the subject evidence—the evidence of Belt's child abuse

convictions—was inadmissible under state law, the Nevada Supreme reasonably ruled,

applying *Strickland*, that Brock's trial counsel did not act unreasonably in not offering the

evidence. Moreover, Brock was not prejudiced by his trial counsel's failure to offer

1  inadmissible evidence. The Nevada Supreme Court's ruling on this claim was not

2  contrary to, or an unreasonable application of, *Strickland*, or any other Supreme Court

3  precedent. The Court will deny Brock habeas corpus relief on Ground 2.

4       **D.    Ground 3**

5       In Ground 3, Brock claims that his federal constitutional rights were violated on

6  account of ineffective assistance of his trial counsel because of his trial counsel's

7  "failure to properly notice an expert witness." Petition for Writ of Habeas Corpus (ECF

8  No. 25), pp. 25–27.

9       Brock asserted this claim on the appeal in his state habeas action. *See*

10  Appellant's Opening Brief, Exh. 92, pp. 26–28 (ECF No. 24-1, pp. 36–38). The Nevada

11  Supreme Court ruled as follows:

12         … Brock argues that counsel should have noticed potential firearm
           expert testimony. However, Brock did not identify the testimony he hoped
13         to elicit from an expert or describe how it would affect his trial. *See
           Hargrove v. State*, 100 Nev. 498, 502, 686 P.2d 222, 225 (1984).
14         Therefore, the district court did not err in denying this claim.

15  Order of Affirmance, Exh. 95, p. 2 (ECF No. 24-4, p. 3).

16       The Nevada Supreme Court's ruling was reasonable. With respect to the

17  prejudice prong of the *Strickland* standard, Brock's claim is completely insubstantial.

18  Brock makes no showing what testimony an expert witness could have provided. *See*

19  *Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001) (mere speculation that an expert

20  could have been found to testify at trial is not sufficient to establish prejudice); *Grisby v.*

21  *Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997) ("Grisby has failed to establish how expert

22  testimony would have raised a 'reasonable probability' that the outcome of the trial

23  would have been different. Speculation about what an expert could have said is not

24  enough to establish prejudice."). The Court will deny Brock habeas corpus relief on

25  Ground 3.

26       **E.    Ground 4**

27       In Ground 4, Brock claims that his federal constitutional rights were violated on

28  account of ineffective assistance of his appellate counsel because of his appellate

counsel's "failure to raise on direct appeal that the district court improperly precluded a percipient [witness's] statements articulating that Mr. Belt was the probable aggressor." Petition for Writ of Habeas Corpus (ECF No. 25), pp. 28–30.

Brock asserted this claim on the appeal in his state habeas action. *See* Appellant's Opening Brief, Exh. 92, pp. 28–31 (ECF No. 24-1, pp. 38–41). The Nevada Supreme Court ruled as follows:

> … Brock argues that appellate counsel should have challenged a district court ruling precluding a witness's opinion that the victim was responsible for the altercation during which he was shot. Brock asserts that it was admissible as a present sense impression. We disagree. The declaration was a statement provided to police which was not made at the time the witness perceived the shooting or immediately thereafter. *See* NRS 51.085. Additionally, it was the witness's opinion about the victim's blame and not a description of the event. *Id*. Therefore, Brock failed to demonstrate that appellate counsel neglected to raise a meritorious claim.

Order of Affirmance, Exh. 95, pp. 2–3 (ECF No. 24-4, pp. 3–4).

The Nevada Supreme Court's ruling regarding the evidentiary issue at the heart of this claim was based purely on the Nevada Supreme Court's interpretation of Nevada law, and that aspect of the Nevada Supreme Court's ruling is authoritative and beyond the scope of this federal habeas action. *See Estelle*, 502 U.S. at 67–68. Therefore, given that the Nevada Supreme Court ruled that the trial court's evidentiary ruling was correct under Nevada law, it inevitably follows that Brock's appellate counsel did not perform deficiently in not raising the issue on Brock's direct appeal, and Brock was not prejudiced. The Nevada Supreme Court reasonably denied relief on this claim. The Nevada Supreme Court's ruling was not contrary to, or an unreasonable application of, *Strickland*, or any other Supreme Court precedent. The Court will deny Brock habeas corpus relief on Ground 4.

### F.     Ground 5

In Ground 5, Brock claims that his federal constitutional rights were violated on account of ineffective assistance of his trial and appellate counsel because of their "failure to object to the State presenting testimony regarding the autopsy from Dr. Lisa Gavin when she did not perform the autopsy." Petition for Writ of Habeas Corpus (ECF

No. 25), pp. 30–34. More specifically, Brock claims that his constitutional right of confrontation under the Sixth and Fourteenth Amendments was violated because the trial court allowed the expert testimony of Dr. Lisa Gavin. Dr. Gavin's testimony was based in part on, and she drew conclusions in part from, an autopsy performed by another doctor, Dr. Gary Telgenhoff. *See id*. Brock cites *Crawford v. Washington*, 541 U.S. 36 (2004); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009); and *Bullcoming v. New Mexico*, 564 U.S. 647 (2011) in support of his contention that there was a confrontation clause violation. *See id*. Brock claims that his trial counsel was ineffective for not objecting, and he claims that his appellate counsel was ineffective for not raising this issue on his direct appeal. *See id*.

Brock asserted this claim on the appeal in his state habeas action. *See* Appellant's Opening Brief, Exh. 92, pp. 31–37 (ECF No. 24-1, pp. 41–47). The Nevada Supreme Court ruled as follows:

> … Brock argues that trial and appellate counsel should have challenged the medical examiner's testimony about the autopsy as she did not perform the autopsy, thus violating *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009) and *Bullcoming v. New Mexico*, 564 U.S. 647 (2011). Brock did not demonstrate deficient performance or prejudice. The testifying medical examiner gave her independent expert opinion based on the autopsy report and photographs and did not violate the Confrontation Clause because her judgment and methods were subject to cross-examination. *See Vega v. State*, 126 Nev. 332, 340, 236 P.3d 632, 638 (2010). As a Confrontation Clause claim would have failed, trial and appellate counsel were not deficient in declining to raise a futile objection or argument. *See Ennis v. State*, 122 Nev. 694, 706, 137 P.3d 1095, 1103 (2006). Therefore, the district court did not err in denying this claim.

Order of Affirmance, Exh. 95, p. 3 (ECF No. 24-4, p. 4).

The Confrontation Clause of the Sixth Amendment, applicable in state court by virtue of the Fourteenth Amendment, provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI; *Pointer v. Texas*, 380 U.S. 400, 403 (1965). The Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination*." Crawford*, 541 U.S. at 53–54. The range of testimonial statements to

which the Confrontation Clause applies includes a statement "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *See id*. at 52. The Confrontation Clause applies to reports of forensic analyses. *See Melendez-Diaz*, 557 U.S. at 315–24. And, the Confrontation Clause applies where a forensic analysis was performed, and the report of the analysis was produced, by one expert, and is presented in court through the testimony of a different expert. *See Bullcoming*, 564 U.S. at 657–63.

However, Brock's claim raises the question whether the autopsy report is a testimonial statement within the meaning of *Crawford*, *Melendez-Diaz*, and *Bullcoming*. Brock cites an opinion of the Eleventh Circuit Court of Appeals and an opinion of the District of Columbia Court of Appeals for the proposition that autopsy reports are testimonial statements. *See* Petition for Writ of Habeas Corpus (ECF No. 25), pp. 32–33, citing *United States v. Ignasiak*, 667 F.3d 1217, 1231–32 (11th Cir. 2012), and *United States v. Moore*, 651 F.3d 30, 73 (D.C. Cir. 2011) (per curium), aff'd in part, *Smith v. United States*, 133 S. Ct. 714 (2013). Brock also cites the rulings of state courts to the same effect. *See id*. at 33. Brock does not cite any Supreme Court precedent for this proposition. *See id*. at 30–34; *see also* Reply (ECF No. 29), p. 13.

The United States Supreme Court has never ruled that autopsy reports are testimonial within the meaning of *Crawford*, *Melendez-Diaz*, and *Bullcoming*. Because the United States Supreme Court has not, and had not at the time of the Nevada Supreme Court's ruling, established that autopsy reports are testimonial, the Nevada Supreme Court's ruling cannot be considered contrary to, or an unreasonable application of, clearly established law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d); *Carey v. Musladin*, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from this Court ..., it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" (quoting 28 U.S.C. § 2254(d))); *see also Greene v. Fisher*, 565 U.S. 34, 38 (2011) (§ 2254(d)'s "backward-looking language

requires an examination of the state-court decision at the time it was made" (quoting *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011))).

Because Brock does not show that the Nevada Supreme Court misapplied clearly established United States Supreme Court precedent in determining that there was no Confrontation Clause violation, it follows that Brock does not show that the Nevada Supreme Court unreasonably ruled that his trial and appellate counsel performed inadequately with respect to the issue, or that he was prejudiced, as required under *Strickland*.

This Court, then, determines that the Nevada Supreme Court's denial of relief on this claim was not contrary to, or an unreasonable application of, *Strickland*, *Crawford*, *Melendez-Diaz*, *Bullcoming*, or any other Supreme Court precedent. The Court will deny Brock habeas corpus relief on Ground 5.

### G.    Ground 6

In Ground 6, Brock claims that his federal constitutional rights were violated on account of ineffective assistance of his trial counsel "based upon trial counsel's closing wherein counsel conceded the defendant's guilt without the defendant's consent." Petition for Writ of Habeas Corpus (ECF No. 25), pp. 34–38.

In context, the argument of Brock's trial counsel, in closing argument, that is the subject of this claim, is as follows:

> Now, second degree murder is any murder that's not first degree. So if you believe a murder was committed, and you'll have the instructions, and it was premeditated and it was deliberate and all of the elements were there, then it's first degree murder. If you think all of those elements aren't there, it's still murder, it's second degree murder. But if you think that, well, no, that just – that's really not correct, that' s not what really happened, the next choice you have is voluntary manslaughter. Voluntary manslaughter is basically in between first degree murder and self-defense, somewhere in between.
>
> For the sudden violent impulse of passion to be irresistible resulting in a killing which is voluntary manslaughter, there must not have been an interval between the assault or provocation and the killing sufficient for the voice of reason and humanity to be heard. There was no time. Mr. Brock was confronted. He shot his 15 shots. Within three to five seconds there was no time. This was not a time for [quiet] reflection. This was a time for action. This was a time for self-protection.

1         But if you don't think that this is a self-defense case, I would submit
to you it has to be voluntary manslaughter. It's not first degree. There's no
2  way it's first degree. Could you come up with second degree the way you
look at it? I guess. The two—the two things in the middle, second
3  degree murder or voluntary manslaughter, if you get rid of the two that
are farthest apart, that's where your deliberation lies. And if that's where
4  you are, if you haven't considered or you don't think it's self-defense
because of the provocation, because of the situation, because of what
5  happened, it would seem like this is a voluntary manslaughter case.

6  Trial Transcript, Exh. 26 (day 4), pp. 110–11 (ECF No. 21-1, pp. 111–12).

7         Brock asserted this claim on the appeal in his state habeas action. *See*

8  Appellant's Opening Brief, Exh. 92, pp. 37–43 (ECF No. 24-1, pp. 47–53). The Nevada

9  Supreme Court ruled as follows:

10         … Brock asserts that trial counsel improperly conceded his guilt
during closing argument. Brock fails to demonstrate that counsel's
11  decision was unreasonable. Counsel argued that Brock acted in self-
defense and, alternatively, his actions constituted second-degree murder
12  or voluntary manslaughter as opposed to first-degree murder. This
strategy is entitled to deference and was reasonable under the
13  circumstances. *See Armenta-Carpio v. State*, 129 Nev. 531, 535–36, 306
P.3d 395, 398–99 (2013) (recognizing that "[a] concession of guilt is
14  simply a trial strategy—no different than any other strategy the defense
might employ at trial" and counsel's decision should be reviewed for
15  reasonableness); *Doleman v. State*, 112 Nev. 843, 848, 921 P.2d 278,
280–81 (1996) (observing that strategic decisions are virtually
16  unchallengeable under most circumstances). *But cf. Jones v. State*, 110
Nev. 730, 738, 877 P.2d 1052, 1057 (1994) (concluding that counsel's
17  concession of guilt was improper where it contradicted defendant's
testimony). Given the evidence against him, Brock failed to demonstrate a
18  reasonable probability of a different outcome at trial had counsel not made
the challenged argument. Brock and the victim argued on the day of the
19  shooting. Although security responded to the argument, Brock did not
want police called, suggesting he did not consider the victim threatening.
20  The victim was unarmed and was talking on the phone to his girlfriend
when the shooting began. Brock shot at the victim 15 times, emptying his
21  weapon. Eight shots struck the victim and the trajectory of some of the
wounds and physical evidence at the scene suggested that Brock
22  advanced toward the victim and continued to shoot him after he fell.
Therefore, the district court did not err in denying this claim.
23

24  Order of Affirmance, Exh. 95, pp. 3–4 (ECF No. 24-4, pp. 4–5).

25         Brock does not show the Nevada Supreme Court's ruling to be contrary to, or an

26  unreasonable application of, Supreme Court precedent. The only Supreme Court cases

27  cited by Brock are: *Strickland v. Washington*, 466 U.S. 668 (1984); *United States v.*

28

*Cronic*, 466 U.S. 648 (1984); and *Florida v. Nixon*, 543 U.S. 175 (2004). *See* Petition for Writ of Habeas Corpus (ECF No. 25), pp. 34–38; Reply (ECF No. 29), pp. 13–14.

Brock does not in this Court, and he did not in state court, cite *McCoy v. Louisiana*, 138 S.Ct. 1500 (2018), in which the Supreme Court held it is structural error if defense counsel concedes guilt over the defendant's express objection—perhaps because Brock does not allege, or offer any evidence to show, that he expressly objected to his counsel's argument. *See* Petition for Writ of Habeas Corpus (ECF No. 25), pp. 34–38; *see also* Appellant's Opening Brief, Exh. 92, pp. 37–43 (ECF No. 24-1, pp. 47–53).

Brock cites *Strickland* only regarding the general requirements for establishing a claim of ineffective assistance of counsel. *See* Petition for Writ of Habeas Corpus (ECF No. 25), p. 35; Reply (ECF No. 29), p. 14.

Regarding Brock's reliance on *Nixon*, the Nevada Supreme Court's ruling was not inconsistent with that holding. In fact, the holding in *Nixon*, generally tends to support the Nevada Supreme Court's ruling, as it illustrates that a concession, in the absence of express approval or objection from the client, may under some circumstances be reasonable. *See Nixon*, 543 U.S. at 187–92.

Brock cites *Cronic* for the proposition that "[t]he right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing." *See* Petition for Writ of Habeas Corpus (ECF No. 25), p. 35; *see also Cronic*, 466 U.S. at 656. As the Court understands it, the point of Brock's citation of *Cronic* is that, if the attorney error alleged in this claim is like that in *Cronic*—complete failure of counsel to function as the client's advocate—there would be a presumption that Brock was prejudiced. But, in this case, Brock's counsel did not cease to function as his advocate in making the argument Brock complains about.

In fact, in this Court's view, Brock's counsel's argument was not a concession of guilt at all, and it certainly was not a concession that had any impact on the jury's verdict. In its closing argument, the prosecution argued: "[T]he defendant doesn't argue

that this was voluntary manslaughter. He argues it was self-defense and that's it. So let's talk about why this is not self-defense." Trial Transcript, Exh. 26 (day 4), p. 87 (ECF No. 21-1, p. 88). Brock's counsel apparently responded to that argument when he argued that, if the jury did not find self-defense, it should find voluntary manslaughter rather than murder. Brock's counsel did not concede that Brock did not act in self-defense. Brock's counsel said nothing to undermine Brock's assertion that he acted in self-defense. *See*, *e.g.*, Trial Transcript, Exh. 26 (day 4), pp. 107, 118 (ECF No. 21-1, pp. 108, 119) (defense counsel arguing self-defense). Nor did defense counsel concede any fact necessary to the jury's finding of second-degree murder. There was no issue at trial as to whether Brock shot and killed Belt; it undisputed that he had. Trial counsel's argument was simply that if the jury did not find that Brock acted in self-defense, the jury should not find that Brock acted with the malice necessary for murder. That was a reasonable alternative argument, and the Nevada Supreme Court's ruling to that effect was itself reasonable.

Brock has not shown the Nevada Supreme Court's ruling to be contrary to, or an unreasonable application of, *Strickland*, *Nixon*, or any other Supreme Court precedent. The Court will deny Brock habeas corpus relief on Ground 6.

### H.    Ground 7

In Ground 7, Brock claims that his federal constitutional rights were violated on account of ineffective assistance of his trial and appellate counsel because of their "failure to object and advise the jury not to consider unfounded prejudicial character evidence." Petition for Writ of Habeas Corpus (ECF No. 25), pp. 38–42.

The evidence that Brock refers to in this claim was a comment made by prosecution witness Bryan Carbone, the courtesy patrol officer at the apartments where Belt was killed. The following was Carbone's testimony on direct examination about a conversation Carbone had with Brock between the time of Brock's first confrontation with Belt and the time of the shooting:

1   Q.      What was his demeanor like when you made contact with him at that time?

2   A.      Over confident. He just would not stop repeating himself.

3   Q.      So would you—he's very repetitive. Would you say he was frustrated or what do you mean by "over confident"?

4

5   A.      Over confident, there was no hostility. No signs of emotional problems. No nothing. It was just him repeating himself.

6   Q.      What was the first thing he said to you?

7   A.      He--he 's a military law enforcement professional. Something about his tattoos. I—I couldn't make any sense of it. He progressed or went onto the—what happened with him and Mr. Belt at the time.

8

9   Q.      What did he tell you happened?

10  A.      He claimed that Mr. Brock approached Mr. Belt in a talkative fashion about stop slamming the door.

11

12  Q.      Okay.

13  A.      Then he claimed that Mr. Belt came back with a hostile, aggressive, threatening bully-type affect, but he did not identify whether the threatening was verbal or physical.

14

15  Q.      Did you ask him?

16  A.      Yes, ma'am.

17  Q.      Okay. And he couldn't—he couldn't verbalize anything?

18  A.      No.

19  Q.      Did you ask him if you should call the cops?

20  A.      Yes. Later I asked, Should I call the cops upon any mention of threat. He replied with, no, he does not want to look like a punk in front of the cops.

21

22  Q.      Okay. And this is the Defendant saying he doesn't want to look like a punk in front of the cops?

23  A.      Yes, ma'am, Mr. Brock.

24  Q.      Did you say he didn't want to look like a punk in front of anyone else?

25

26  A.      Yes, ma'am. I asked if he notified the office of any of this. And he replied with he does not want to look like a punk in front of the staff.

27

28  Q.      Did he tell you how long he had been dealing with the noise issue?

A.      No history with the tenant. He didn't identify if it was just that day, is that what you're asking?

Q.      Right.

A.      Yes, ma'am.

Q.      Okay. Did you ask him if he had ever notified the office?

A.      Yes, ma'am.

Q.      And he indicated he did not?

A.      No.

Q.      At some point, did he calm down?

A.      Yes. At that point I [inaudible], so I recommended one of the two parties move to a separate part of the location complex. He replied with he does not feel he should move.

Q.      So at that point did he get frustrated or upset with you?

A.      Yes, ma'am

Q.      And what did you tell him next?

A.      Because he wouldn't stop repeating himself, I said, "Okay, I'll recommend [redacted], Mr. Belt, relocate to another apartment."

Q.      Okay. And did that appease the Defendant?

A.      Yes, ma'am. He was content at that point.

Q.      And did your conversation with him end at that point?

A.      Yes, ma'am. I said, "If any further, just call my extension, we'll"—that's it. Just walked away.

Q.      Okay. And did he seem calm at that point?

A.      Yes, ma'am.

Trial Transcript, Exh. 22 (day 2), pp. 38–41 (ECF No. 19-1, pp. 39–42). Then, on a re-

cross examination, Brock's counsel asked Carbone about that conversation, as follows:

Q.      Now, you—you said that he repeated himself several times when you spoke to him about the slamming of the door incident?

A.      At 6:38 p.m., yes, sir.

Q.      Did he seem joyous then?

18

1
> A.     No, sir.

2   *Id*. at 59 (ECF No. 19-1, p. 60). And then, on the prosecutor's further redirect

3   examination of Carbone, the following exchange occurred:

4
> Q.     When he was repeating himself earlier at that earlier confrontation, what did he keep repeating?

5

6
> A.     Something about being a military law enforcement professional, his tattoos, *something about gang member*. It was hard to identify.

7

8
> Q.     Is it fair to say he wanted to make sure you knew he had prior military experience?

9
> A.     That had nothing to do with why he called me, but.

10
> Q.     Right. But is that what happened?

11
> A.     He just kept repeating himself, yes, but.

12
> Q.     About how many times do you think he told you he had prior military or law enforcement experience?

13

14
> A: Within a half an hour, it was more than I can count, so.

15   *Id*. at 60 (ECF No. 19-1, p. 61) (emphasis added). It is the witness's unsolicited

16   statement, "something about a gang member," that Brock claims his trial counsel should

17   have objected to or requested instruction to the jury regarding, and his appellate

18   counsel should have raised on appeal.

19          Brock asserted this claim on the appeal in his state habeas action. *See*

20   Appellant's Opening Brief, Exh. 92, pp. 43–45 (ECF No. 24-1, pp. 53–55). The Nevada

21   Supreme Court ruled as follows:

22
> … Brock argues that trial and appellate counsel should have challenged improper character evidence and requested a limiting instruction. We disagree. The State elicited testimony about Brock's statements to a security officer in response to defense questioning about how Brock spoke to the security officer after his initial argument with the victim. *See State v. Gomes*, 112 Nev. 1473, 1480, 930 P.2d 701, 706 (1996) (providing that error in admitting evidence was not reversible where defense invited the error). Moreover, it was not clearly indicative that the statement made by Brock to this witness indicated any prior bad act or unfavorable character evidence about Brock. Therefore, the district court did not err in denying this claim.

23

24

25

26

27

28   Order of Affirmance, Exh. 95, pp. 4–5 (ECF No. 24-4, pp. 5–6).

The Court finds the Nevada Supreme Court's ruling to be reasonable. The witness's testimony that Brock said "something about gang member" was so vague as to be meaningless. The witness did not indicate who Brock said was a gang member. The witness did not say that Brock said he himself was a gang member. The witness did not specify what gang, or even what kind of gang, was referred to. The witness did not testify that Brock admitted to committing any prior crime or bad act. The witness did not say that Brock's statement, "something about gang member," indicated bad character on Brock's part. The statement by the witness was too brief and vague to support any determination that Brock's trial or appellate counsel performed deficiently in not taking any action regarding it. And, at any rate, the statement by the witness was too brief and vague for Brock to satisfy the second prong of the *Strickland* analysis by showing that he was prejudiced by either trial or appellate counsel's failure to take any action regarding it. Brock has not shown the Nevada Supreme Court's ruling to be contrary to, or an unreasonable application of, *Strickland*. The Court will deny Brock habeas corpus relief on Ground 7.

I.    **Ground 8**

In Ground 8, Brock claims that his federal constitutional rights were violated on account of ineffective assistance of his trial and appellate counsel because of trial counsel's "failure to object" and appellate counsel's failure "to raise on appeal the district court's giving of improper jury instructions." Petition for Writ of Habeas Corpus (ECF No. 25), pp. 42–46.

1.    **Ground 8A - The Malice Instruction**

Brock claims that his trial and appellate counsel were ineffective for failing to challenge the following jury instruction:

> Express malice is that deliberate intention unlawfully to take away the life of a fellow creature, which is manifested by external circumstances capable of proof.

> Malice may be implied when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart.

*See* Petition for Writ of Habeas Corpus (ECF No. 25), pp. 42–44; Jury Instruction No. 7,

Exh. 25 (ECF No. 20-3, p. 8). More specifically, Brock claims that his trial and appellate

counsel should have argued that the phrase "abandoned and malignant heart" is vague.

*See* Petition for Writ of Habeas Corpus (ECF No. 25), pp. 42–44.

The Nevada Supreme Court rejected this claim, citing *Leonard v. State*, 117 Nev.

53, 78–79, 17 P.3d 397, 413 (2001). Order of Affirmance, Exh. 95, p. 5 (ECF No. 24-4,

p. 6). In *Leonard*, in 2001, the Nevada Supreme Court held as follows regarding the

argument that Brock makes in this case:

> … Leonard also claims that the instructions were insufficient to
> define malice. Leonard specifically asserts that the implied malice
> instruction contains language "so vague and pejorative that [it] is
> meaningless without further definition, and it should have been eliminated
> in favor of less archaic terms which define the conscious disregard for life
> from which malice may be implied." Leonard notes that the California
> Supreme Court has criticized similar language defining implied malice in
> California's own statute. *See, e.g., People v. Phillips*, 64 Cal.2d 574, 51
> Cal.Rptr. 225, 414 P.2d 353, 363–64 (1966), *overruled on other grounds
> by People v. Flood*, 18 Cal.4th 470, 76 Cal.Rptr.2d 180, 957 P.2d 869,
> 882 n. 12 (1998); Cal.Penal Code § 188 (West 1999).
>
> However, the statutory language is well established in Nevada, and
> we conclude that the malice instructions as a whole were sufficient. This
> court has characterized the statutory language "abandoned and malignant
> heart" as "archaic but essential." *Keys v. State*, 104 Nev. 736, 740, 766
> P.2d 270, 272 (1988). This court held that similar instructions "accurately
> informed the jury of the distinction between express malice and implied
> malice." *Guy v. State*, 108 Nev. 770, 777 & n. 2, 839 P.2d 578, 582–83 &
> n. 2 (1992). Further, this court has held that language in the malice
> aforethought instruction is constitutional that refers to "a heart fatally bent
> on mischief" and acts done "in contradistinction to accident or mischance."
> *See Leonard*, 114 Nev. at 1208, 969 P.2d at 296. This court concluded
> that "[a]lthough these phrases are not common in today's general
> parlance, ... their use did not deprive appellant of a fair trial." *Id*. Absent
> some indication that the jury was confused by the malice instructions
> (including the instruction on malice aforethought and express malice), a
> defendant's claim that the instructions were confusing is merely
> "speculative." *See Guy*, 108 Nev. at 777, 839 P.2d at 583. Leonard has
> not shown that the jury was confused in the instant case.

*Leonard*, 117 Nev. at 78–79, 17 P.3d at 413. Plainly then, to the extent Brock's position

is that his counsel should have challenged the instruction under state law, his claim is

foreclosed by Nevada Supreme Court precedent. And, beyond that, Brock does not

make any argument that his counsel should have challenged the instruction under

federal law, much less that the instruction was invalid under United States Supreme Court precedent. *See* Petition for Writ of Habeas Corpus (ECF No. 25), pp. 42–44.

Because Brock does not identify any legitimate challenge that either his trial counsel or his appellate counsel could have posed to the malice instruction, he does not show that either performed deficiently or that he was prejudiced. The Nevada Supreme Court's ruling on this claim was not contrary to, or an unreasonable application of, *Strickland*, or any other Supreme Court precedent. The Court will deny Brock habeas corpus relief on Ground 8A.

### 2.    Ground 8B - The Premeditation and Deliberation Instruction

Brock claims that his trial and appellate counsel were ineffective for failing to challenge the following jury instruction:

> Premeditation is a design, a determination to kill, distinctly formed in the mind by the time of the killing.

> Premeditation need not be for a day, an hour, or even a minute. It may be as instantaneous as successive thoughts of the mind. For if the jury believes from the evidence that the act constituting the killing has been preceded by and has been the result of premeditation, no matter how rapidly the act follows the premeditation, it is premeditated.

*See* Petition for Writ of Habeas Corpus (ECF No. 25), pp. 44–45; Jury Instruction No. 8, Exh. 25 (ECF No. 20-3, p. 9). Brock argues that "[b]y approving the concept of 'instantaneous' premeditation and deliberation, the giving of this instruction created a reasonable likelihood that the jury would convict and sentence on a charge of first degree murder without any rational basis for distinguishing its verdict from one of second degree murder, and without proof beyond a reasonable doubt of "premeditation and deliberation," which are statutory elements of first degree murder." Petition for Writ of Habeas Corpus (ECF No. 25), p. 44.

This claim is wholly without merit. Brock was convicted of second-degree murder, not first-degree murder. Even if this instruction was erroneous—and this Court does not find that it was—Brock was not prejudiced by his counsel's failure to challenge it. The Nevada Supreme Court's denial of relief on this claim was not contrary to, or an

unreasonable application of, *Strickland*, or any other Supreme Court precedent. The Court will deny Brock habeas corpus relief on Ground 8B.

### 3.     Ground 8C - The Reasonable Doubt Instruction

Brock claims that his trial and appellate counsel were ineffective for failing to challenge the following jury instruction:

> A reasonable doubt is one based on reason. It is not mere possible doubt but is such a doubt as would govern or control a person in the more weighty affairs of life. If the minds of the jurors, after the entire comparison and consideration of all the evidence, are in such a condition that they can say they feel an abiding conviction of the truth of the charge, there is not a reasonable doubt. Doubt to be reasonable must be actual, not mere possibility or speculation.

*See* Petition for Writ of Habeas Corpus (ECF No. 25), pp. 45–46; Jury Instruction No. 31, Exh. 25 (ECF No. 20-3, p. 32). Brock's argument that this instruction was objectionable is, in its entirety, as follows:

> The trial court's reasonable doubt instruction given improperly minimized the State's burden of proof.

> *          *          *

> The instruction given to the jury minimized the State's burden of proof by including terms "It is not mere possible doubt, but is such a doubt as would govern or control a person in the more weighty affairs of life" and "Doubt, to be reasonable, must be actual, not mere possibility or speculation." This instruction inflates the constitutional standard of doubt necessary for acquittal, and the giving of this instruction created a reasonable likelihood that the jury would convict and sentence based on a lesser standard of proof than the constitution requires. *See Victor v. Nebraska*, 511 U.S. 1, 24 (1994) (Ginsburg, J., concurring in part); *Cage v. Louisiana*, 498 U.S.39, 41 (1990); *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). Mr. Brock recognizes that the Nevada Supreme Court has found this instruction to be permissible. *See e.g. Elvik v. State*, 114 Nev. 883, 985 P.2d 784 (1998); *Bolin v. State*, 114 Nev. 503, 960 P.2d 784 (1998). However, Mr. Brock submits this instruction is in violation of clearly established federal law and mandates reversal.

Petition for Writ of Habeas Corpus (ECF No. 25), pp. 45–46.

Brock's citations to *Victor*, *Cage*, and *Estelle* do not show Nevada's reasonable doubt instruction to be erroneous as a matter of federal law. In *Victor*, the Supreme Court held constitutional a reasonable doubt instruction, and there is nothing in the opinion suggesting that the language of the Nevada reasonable doubt instruction

renders it unconstitutional. *See Victor*, 511 U.S. at 10–23. In *Cage*, the Supreme Court ruled unconstitutional a reasonable doubt instruction, but that instruction was different from the instruction in this case; the instruction at issue in *Cage* equated a reasonable doubt with "a 'grave uncertainty' and an 'actual substantial doubt.'" *See Cage*, 298 U.S. at 41 ("It is plain to us that the words 'substantial' and 'grave,' as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable-doubt standard."). *Estelle* did not involve a reasonable doubt instruction at all. *See Estelle*, 502 U.S. at 70–75. Brock does not explain how the reasonable doubt instruction given at his trial was inconsistent with the holding in any of those Supreme Court cases.

Moreover, the Ninth Circuit Court of Appeals has ruled constitutional a reasonable doubt instruction similar to that given at Brock's trial. *Ramirez v. Hatcher*, 136 F.3d 1209, 1213–15 (9th Cir. 1998), *cert. denied*, 525 U.S. 967 (1998). Furthermore, the Ninth Circuit Court of Appeals has ruled that this issue is not worthy of a certificate of appealability. *Nevius v. McDaniel*, 218 F.3d 940, 944–45 (9th Cir. 2000) ("That claim has been entirely undermined by our subsequent decision in [*Ramirez*]."). Counsel's "[f]ailure to raise a meritless argument does not constitute ineffective assistance." *Martinez v. Ryan*, 926 F.3d 1215, 1226 (9th Cir. 2019) (quoting *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985)).

The Nevada Supreme Court's ruling on this claim was not contrary to, or an unreasonable application of, *Strickland*, *Victor*, *Cage*, *Estelle*, or any other Supreme Court precedent. The Court will deny Brock habeas corpus relief on Ground 8C.

### 4.     Ground 8D - The Equal and Exact Justice Instruction

Brock claims that his trial and appellate counsel were ineffective for failing to challenge the following jury instruction:

> Now you will listen to the arguments of counsel who will endeavor to aid you to reach a proper verdict by refreshing in your minds the evidence and by showing the application thereof to the law; but, whatever counsel may say, you will bear in mind that it is your duty to be governed in your deliberation by the evidence as you understand it and remember it

1   to be and by the law as given to you in these instructions, with the sole,
2   fixed and steadfast purpose of doing equal and exact justice between the
    Defendant and the State of Nevada.

3   *See* Petition for Writ of Habeas Corpus (ECF No. 25), p. 46; Jury Instruction No. 38,

4   Exh. 25 (ECF No. 20-3, p. 39). Brock's entire argument that this instruction is

5   objectionable is as follows:

6           The trial court's "equal and exact justice" instruction improperly
            minimized the State's burden of proof.
7

8                                        *    *    *

9           By informing the jury that it must provide equal and exact justice
            between the defendant and the State, this instruction created a
10          reasonable likelihood that the jury would not apply the presumption of
            innocence in favor of Mr. Brock, and would thereby convict and sentence
            based on [a] lesser standard of proof than the constitution requires.
11          *Sullivan v. Louisiana*, 508 U.S. 275, 281 (1993).

12  Petition for Writ of Habeas Corpus (ECF No. 25), p. 46.

13          As far as state law goes, Brock's argument that the equal and exact justice

14  instruction was erroneous is foreclosed by the Nevada Supreme Court's ruling in

15  *Leonard v. State*, 114 Nev. 1196, 969 P.2d 288 (1998), in which that court held:

16          Appellant contends that the district court denied him the
            presumption of innocence by instructing the jury to do "equal and exact
17          justice between the Defendant and the State of Nevada." This instruction
            does not concern the presumption of innocence or burden of proof. A
18          separate instruction informed the jury that the defendant is presumed
            innocent until the contrary is proven and that the state has the burden of
19          proving beyond a reasonable doubt every material element of the crime
            and that the defendant is the person who committed the offense. Appellant
20          was not denied the presumption of innocence.

21  *Leonard*, 114 Nev. at 1209, 969 P.2d at 296. And, with regard to federal law, Brock

22  does not make any showing that the equal and exact justice instruction was in conflict

23  with clearly established federal law. The *Sullivan* case, cited by Brock, did not involve

24  an equal and exact justice instruction; rather, *Sullivan* stands for the proposition that a

25  constitutionally deficient reasonable doubt instruction—a reasonable doubt instruction

26  essentially identical to the one given in *Cage*—cannot be harmless error because it

27  vitiates all the jury's findings. *See Sullivan*, 508 U.S. at 277–82. Brock does not show

28  the Nevada Supreme Court's ruling on this claim to be inconsistent with *Sullivan*.

Brock's trial and appellate counsel did not perform deficiently for not challenging this jury instruction, and Brock was not prejudiced. The Nevada Supreme Court's ruling on this claim was not contrary to, or an unreasonable application of, *Strickland*, *Sullivan*, or any other Supreme Court precedent. The Court will deny Brock habeas corpus relief on Ground 8D.

### J.      Ground 9

In Ground 9, Brock claims that he "is entitled to a reversal of his convictions based upon cumulative error." Petition for Writ of Habeas Corpus (ECF No. 25), pp. 46–47. The Court finds no error, and, therefore, there are no errors to be considered cumulatively. Moreover, with regard to Brock's claims of ineffective assistance of counsel, the Court determines that Brock does not meet the prejudice part of the *Strickland* standard, that is, he was not prejudiced by the alleged deficient performance of his attorneys, whether the alleged errors of his counsel are considered individually or cumulatively. The Court will deny Brock habeas corpus relief on Ground 9.

### K.      Certificate of Appealability

The standard for the issuance of a certificate of appealability requires a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c). The Supreme Court has interpreted 28 U.S.C. § 2253(c) as follows:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077–79 (9th Cir. 2000). Applying the standard articulated in *Slack*, the Court finds that a certificate of appealability is unwarranted.

///

///

///

///

1    **IV.    CONCLUSION**

2         **IT IS THEREFORE ORDERED** that the Petition for Writ of Habeas Corpus (ECF

3    No. 1) is denied.

4         **IT IS THEREFORE ORDERED** that Petitioner is denied a certificate of

5    appealability.

6         **IT IS FURTHER ORDERED** that the Clerk of the Court is directed to enter

7    judgment accordingly.

8

9         DATED THIS 1st day February, 2022.

10

11                              _____

12                              LARRY R. HICKS
                                UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28